IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| BEXAR COUNTY HOSPITAL DISTRICT d/b/a UNIVERSITY HEALTH SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>SCHINDLER ELEVATOR CORPORATION,<br><br>Defendant. | §§§§§§§§§§§ Civil Action No. 5:19-cv-00124-FB (HJB) |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S AFFIRMATIVE DEFENSES**

Plaintiff Bexar County Hospital District d/b/a University Health System ("UHS" or "Plaintiff") files this motion for summary judgment on Defendant Schindler Elevator Corporation's ("Schindler" or "Defendant") affirmative defenses under Federal Rule of Civil Procedure 56.

## INTRODUCTION

UHS is a nationally recognized teaching hospital and network of outpatient healthcare centers, owned by the people of Bexar County. UHS's University Hospital serves as the primary teaching facility for UT Health San Antonio and is the premier Level 1 trauma center for South Texas and the region's only pediatric Level 1 trauma center.

For nearly ten years, Schindler was entrusted with maintaining the elevator system at UHS's hospital (University Hospital) and its ambulatory clinics, including through a contract between UHS and Schindler that lasted from January 1, 2012 to July 2016. Despite being paid millions of dollars for this important role in ensuring the safety and security of elevators used by UHS's patients, guests, and staff, Schindler failed to maintain the elevators and disregarded its contractual duties to UHS. Compounding Schindler's deficient maintenance of the elevators, Schindler overbilled UHS for its services, including charging UHS for contractually-required preventive maintenance hours and services that were never performed by Schindler's technicians.

Due to Schindler's overbilling and grossly inadequate maintenance services, UHS terminated its contract with Schindler. After doing so, UHS was forced to incur substantial emergent and non-emergent costs in making repairs that Schindler should have completed in the course of properly maintaining UHS's elevators, and UHS was forced to hire a substitute elevator maintenance contractor at an increased cost to UHS.

UHS seeks more than $2.8 million in damages and attorneys' fees due to Schindler's failure to properly maintain and repair UHS's elevators and Schindler's overbilling of UHS. To avoid liability for its deficient services and failure to comply with its contractual obligations, Schindler has asserted thirteen

separate affirmative defenses. After months of discovery, however, Schindler cannot present sufficient evidence of specific facts to support its affirmative defenses. UHS files this motion for summary judgment to obtain dismissal of Schindler's unsupported affirmative defenses prior to trial.

## STAGE OF PROCEEDING AND RULE 56 STANDARD

This case is ripe for summary judgment under Federal Rule of Civil Procedure 56. Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party seeking summary judgment on another party's claim or affirmative defense may demonstrate the absence of a genuine issue of material fact by showing there is no evidence to support an essential element of the claim. *See, e.g., J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996). To survive a motion for summary judgment, the responding party must "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 322.

The discovery period in this case ended on November 15, 2019. The parties have exchanged written discovery and taken eight depositions. Each side has

designated expert witnesses and provided expert reports. After months of discovery and the designation of expert witnesses, Schindler cannot designate specific facts to show there is a genuine issue for trial on Schindler's affirmative defenses. UHS thus requests that the Court enter summary judgment dismissing each of Schindler's thirteen affirmative defenses.

## SUMMARY JUDGMENT EVIDENCE

**Exhibit A**: Schindler's Answer to Plaintiff's Original Petition and Counterclaim
**Exhibit B**: Excerpts from the Deposition of Michael Shelburne
**Exhibit C**: Elevator Services Agreement between UHS and Schindler

## ARGUMENT

**A. Schindler cannot support its affirmative defense of mistake.**

Schindler has asserted two "mistake" defenses to UHS's breach of contract claim. Schindler alleges that "[b]oth parties operated under a mutual mistake with respect to the performance of the subject contract." *See* Schindler's Answer to Plaintiff's Original Petition and Counterclaim ("Answer") at 3. Schindler also claims that it "operated under a unilateral mistake about the subject contract making it unenforceable." *Id*.

**1. Mutual Mistake**

The defense of mutual mistake cannot be established by self-serving, subjective statements of intent. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 751 (Tex. 2009). To establish mutual mistake, Schindler

must present evidence of objective circumstances that establish UHS and Schindler had the same misunderstanding of a material fact involving a material part of the contract. *See Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 679 (Tex. 2017).

Schindler cannot present specific facts that would demonstrate any actual mistake surrounding execution of the contract with UHS. There is no evidence that both UHS and Schindler had the same misunderstanding of a material fact in entering into the contract. The language of the contract between UHS and Schindler is clear and unambiguous. To the extent Schindler attempts to introduce self-serving, subjective statements that Schindler had an understanding or intent that contradicts the plain language of the agreement, such assertions cannot establish a mistake that permits Schindler to avoid enforcement of the contract.

### 2. Unilateral Mistake

The defense of unilateral mistake requires Schindler to prove that (1) Schindler's alleged mistake would have been made regardless of the exercise of ordinary care; (2) enforcing the contract as written would be unconscionable; and (3) the parties can be returned to the status quo such that rescission of the contract to address Schindler's alleged mistake would not prejudice UHS. *See James T. Taylor & Son, Inc. v. Arlington ISD*, 335 S.W.2d 371, 372-73 (Tex. 1960).

Schindler cannot present admissible evidence of specific facts to support any of these elements of unilateral mistake. Again, if Schindler relies on self-serving, subjective statements of a supposed misunderstanding held by Schindler that contradicts the plain language of the contract—and that could have been discovered by simply reading the contract—then Schindler cannot establish that a material mistake would have been made regardless of Schindler's exercise of ordinary care. And Schindler cannot present evidence to show that enforcement of the contract as written would be unconscionable, or that reforming the contract would not prejudice UHS. Schindler cannot avoid enforcement of its contract with UHS based on a self-serving, subjective statement of intent that contradicts the written contract itself.

**B.     Schindler cannot support its affirmative defense that the contract is unenforceable because it lacks essential terms.**

Schindler vaguely alleges that the contract with UHS "was missing essential terms and is unenforceable to that extent." Answer at 2. However, after months of discovery and the opportunity to fully explore the scope of the contract, Schindler cannot present admissible evidence of any missing terms of the UHS contract that are essential, such that the parties would regard the supposedly missing terms as a vitally important element of their bargain. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016). Schindler thus cannot avoid enforcement of its

contract with UHS on the unsupported ground that the contract lacks an essential term.

**C.   Schindler cannot support its affirmative defense of impracticability.**

In a bid to excuse its non-performance of the contract with UHS, Schindler has also asserted an affirmative defense alleging that "[t]he circumstances surrounding the contract had changed dramatically and the contract became impracticable." Answer at 3. To demonstrate impossibility or impracticability of performance based on changed circumstances, Schindler must prove that its performance was made impossible by supervening circumstances that could not have been anticipated when the contract was executed. *See, e.g., Centex Corp. v. Dalton*, 840 S.W.2d 952, 953-54 (Tex. 1992).

Schindler cannot present specific facts of any supervening circumstances that Schindler could not have anticipated when the contract with UHS was executed. And Schindler cannot show that any changed circumstances made performance of the contract impossible or impracticable. Simply put, there is no evidence that changed circumstances made performance by Schindler impossible. Schindler simply failed to perform.

**D.   Schindler cannot support its affirmative defense of contract repudiation.**

In a further attempt to avoid liability for its breach of the contract with UHS, Schindler alleges that UHS "repudiated the subject contract prior to any breach by

Schindler." Answer at 3. To establish a repudiation defense, Schindler must prove that UHS, without just excuse, indicated by unconditional words or actions that it was refusing to perform its contractual obligations before Schindler breached the contract. *See El Paso Prod. v. Valence Oper. Co.*, 112 S.W.3d 616, 621-22 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Here, Schindler cannot present any specific facts showing that UHS refused to perform its contractual obligations at any time, much less at any time before Schindler breached the contract. As permitted by the contract, UHS terminated the contract when Schindler failed to perform its contractual obligations. UHS's words and conduct in terminating Schindler for its deficient performance cannot be characterized as repudiation of the contract by UHS.

E.  **Schindler cannot support its affirmative defense of fraudulent inducement.**

Schindler attempts avoid paying for UHS's costs of correcting Schindler's deficient work by asserting a frivolous defense that "Schindler was fraudulently induced into agreeing to repairs which Plaintiff contends were necessary but which were not." Answer at 2. Schindler makes no effort to further explain or support its threadbare fraud allegation.

To establish an affirmative defense of fraudulent inducement, Schindler must prove that (1) UHS made a false, material representation to Schindler; (2) at the time it was made, UHS knew the representation was false or made the

representation recklessly, as a positive assertion, and without knowledge of its truth; (3) UHS made the representation with the intent that Schindler act on it; (4) Schindler justifiably relied on the representation and entered into a binding agreement with UHS based on the representation; and (5) the representation caused injury to Schindler. *See Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).

Schindler cannot present specific factual evidence to support any of the essential elements of a fraudulent inducement defense. Among other elements, there is no evidence whatsoever that UHS ever made a false representation to Schindler. Schindler, on the other hand, repeatedly assured UHS that it was properly maintaining the hospital's vital elevator system and billed millions of dollars for its work, despite the fact that Schindler shirked its responsibilities and never intended to comply with the specific maintenance tasks and frequencies required by the parties' contract. After failing in every aspect of its duties as the elevator maintenance contractor hired by UHS, Schindler should not be allowed to assert a frivolous fraud defense to avoid paying for the repair costs necessitated by Schindler's defective work.

**F. Schindler cannot support its affirmative defense of novation.**

Schindler's next affirmative defense is that "[t]he parties entered into a novation with respect to the claimed repairs by Plaintiff and Schindler has not breached that agreement." Answer at 3. To establish the defense of novation,

Schindler must prove that (1) UHS and Schindler agreed to a valid contract regarding "claimed repairs" and (2) such "repair" contract replaces and extinguishes the parties' prior written contract.

Like Schindler's fraud defense, the novation defense simply has no factual support. Schindler cannot present specific facts to support any element of novation, much less a novation or any type of replacement contract "with respect to claimed repairs" as alleged by Schindler.

**G.     Schindler cannot support its affirmative defenses regarding mitigation of damages.**

Schindler asserts a few separate defenses that focus on UHS's mitigation of its damages, including alleging that (1) "Plaintiff failed to mitigate its damages;" (2) "Plaintiff failed to secure reasonable costs for repairs made on its elevators by a substitute contractor"; and (3) "Plaintiff sought to secure upgrades above and beyond simple maintenance repairs as part of this litigation." Answer at 3 – 4. Schindler bears the burden of proving not only that UHS failed to mitigate its damages, but also that the damages could have been mitigated. *See Houston Chronicle Publ'g v. McNair Trucklease, Inc.*, 519 S.W.2d 924, 929 (Tex. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.).

UHS's damages in this case include (1) the costs incurred by UHS in repairing elevator equipment that Schindler failed to repair or maintain; (2) Schindler's overcharges for certain personnel and services; and (3) the costs

incurred by UHS in replacing Schindler as the maintenance contractor for UHS's elevators and obtaining substitute performance following Schindler's termination. Schindler cannot present any evidence to show that UHS failed to mitigate its damages, or that UHS's damages could have been mitigated in these circumstances. Schindler also cannot demonstrate that UHS failed to secure reasonable repair and substitute performance costs by its substitute contractor, or that the repair costs that give rise to a portion of UHS's damages involved equipment "upgrades" rather than repairs. UHS was forced to pay the costs it is seeking to recover from Schindler in this case. There is no evidence that those damages could have been avoided or mitigated. Schindler thus cannot satisfy its burden of presenting evidence to support its affirmative defenses related to UHS's mitigation of its damages.

## H. Schindler cannot support its affirmative defense of waiver.

Schindler has also asserted a conclusory affirmative defense alleging that "Plaintiff's actions amount to a waiver." Answer at 3. Waiver is an intentional relinquishment of a known right that is shown through express words or clear conduct inconsistent with claiming that right. *Shields L.P. v. Bradberry*, 526 S.W.3d 471, 485 (Tex. 2017). Schindler cannot present any evidence that UHS's "actions" somehow constitute a relinquishment or abandonment of some unspecified right. The affirmative defense of waiver thus should be dismissed.

## I. Schindler cannot support its affirmative defenses of laches and unclean hands.

Schindler also pled a vague affirmative defense claiming that "Plaintiff's claims are barred by the doctrine of laches or unclean hands." Answer at 4. Both of these defenses are affirmative defenses to equitable claims and do not apply to a breach of contract claim. *See City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 221 (Tex. App.—San Antonio 2003, no pet.); *Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 415 (Tex. App.—Corpus Christi 2001, pet. denied); *Bluebonnet Sav. Bank v. Grayridge Apt. Homes, Inc.*, 907 S.W.2d 904, 912 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

To prove laches, Schindler must establish that UHS unreasonably delayed in asserting its rights and that Schindler changed its position in good faith and to its detriment because of the delay. *See Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998). The doctrine of unclean hands requires proof that UHS's conduct "has been unconscientious, unjust, marked by a want of good faith or violates the principles of equity and righteous dealing." *City of Fredericksburg*, 126 S.W.3d at 221.

Schindler cannot present evidence of specific facts to support the elements of laches and unclean hands. Therefore, to the extent that those doctrines are raised in response to any equitable claims brought by UHS, Schindler's affirmative defenses should be dismissed.

**J.     Schindler cannot support its affirmative defense of failure to satisfy conditions precedent.**

Finally, Schindler has alleged that "[c]onditions precedent for contract enforcement remain outstanding preventing Plaintiff from maintaining this litigation." Answer at 3. Other than this general statement, Schindler has made no effort to identify the specific conditions precedent that it claims to be outstanding.

UHS alleged in its Original Petition that all conditions precedent have occurred or been performed. *See* Plaintiff's Original Petition at ¶ 7. Because Schindler failed to state a denial of the conditions precedent with particularity, UHS's allegations regarding occurrence of all conditions precedent are deemed admitted and Schindler's defense should be dismissed. *See EEOC v. Service Temps Inc.*, 679 F.3d 323, 331 (5th Cir. 2012); *Myers v. Central Fla. Invs.*, 592 F.3d 1201, 1224 (11th Cir. 2010).

## CONCLUSION

For these reasons, Plaintiff UHS respectfully requests that the Court grant this motion for summary judgment and enter an order dismissing with prejudice each of Schindler's affirmative defenses under Federal Rule of Civil Procedure 56.

Respectfully submitted,

LIGHTFOOT, FRANKLIN & WHITE LLC

*/s/ Brian C. Boyle*
Brian C. Boyle
Texas Bar No. 24045543
bboyle@lightfootlaw.com
1885 Saint James Place, Suite 1150
Houston, Texas 77056
Telephone: (713) 960-1488
Facsimile: (713) 960-8991

Robert J. "Jay" Sewell
Texas Bar No. 24102485
jsewell@lightfootlaw.com
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone: (205) 581-0700
Facsimile: (205) 581-0799

ATTORNEYS FOR PLAINTIFF,
BEXAR COUNTY HOSPITAL DISTRICT
d/b/a UNIVERSITY HEALTH SYSTEM

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been duly served upon all counsel of record via the Court's electronic case management filing system on this the 16th day of December, 2019.

                                                */s/ Brian Boyle*
                                                Brian Boyle