UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BEXAR COUNTY HOSPITAL DISTRICT d/b/a UNIVERSITY HEALTH SYSTEM, | § § § | |
| Plaintiff, | § § | |
| v. | § § | SA-19-CA-124-FB (HJB) |
| SCHINDLER ELEVATOR CORPORATION, | § § § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Fred Biery, United States District Judge:**

This Report and Recommendation concerns the Motion for Summary Judgment on Defendant's Affirmative Defenses filed by Plaintiff Bexar County Hospital District d/b/a University Health System ("UHS"). (Docket Entry 27.) This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b) for consideration of pretrial matters. (Docket Entry 6.) For the reasons set out below, I recommend that UHS's motion (Docket Entry 27) be **GRANTED**.

**I.   Jurisdiction.**

The Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (*See* Docket Entry 22.) The undersigned has authority to make this recommendation pursuant to 28 U.S.C. § 636(b).

**II.   Background.**

Plaintiff UHS is a teaching hospital and network of outpatient healthcare centers owned by Bexar County and located in San Antonio, Texas. (Docket Entry 1-2, at 3, 5.) Defendant Schindler Elevator Corporation ("Schindler") is a full-service elevator business which handles manufacturing, installation, and maintenance of elevators in the United States. (*Id.* at 3, 6.)

UHS contracted with Schindler for elevator maintenance services in 2006. (Docket Entry 1-2, at 6.) UHS renewed Schindler's service contract in 2011, with the new agreement calling for Schindler to perform elevator maintenance and repair services at all UHS facilities in Bexar County, Texas, from January 2012 through December 2021. (*Id.* at 6, 18.)

UHS allegedly began receiving complaints about its elevators during the course of the second agreement: patients, employees, and visitors were being trapped on the elevators for extended periods, and several elevator cars went into a free-fall requiring emergency brakes to stop them. (Docket Entry 1-2, at 8.) Due to these complaints, UHS hired another company to perform a maintenance audit of UHS's elevators. (*Id.*) The audit revealed deficiencies which were attributed to Schindler's alleged failure to perform adequate repairs and maintenance as required under its contract with UHS. (*Id.*) UHS sent multiple demands to Schindler to remedy the alleged deficiencies, but Schindler did not make the requested repairs. (*Id.*) The two sides reached an impasse and, based on the allegedly deficient maintenance, UHS terminated their agreement with Schindler in July 2016. (*Id.* at 9.)

UHS then hired another elevator services contractor, Thyssenkrupp, to complete repairs to the elevators and equipment at their facilities. (Docket Entries 1-2, at 10; 30-1, at 8.) The contract for the repairs was not subject to public bidding; Thyssenkrupp was selected in part because it had been UHS's elevator services contractor before the 2006 agreement with Schindler. (Docket Entry 30-1, at 8.) The Thyssenkrupp repairs cost UHS over $700,000. (Docket Entry 1-2, at 10.) UHS demanded reimbursement from Schindler for these repairs, claiming they were entitled to it under the contract, but Schindler refused to pay. (*Id.*)

UHS filed suit against Schindler in state court on December 6, 2018. (Docket Entry 1-2, at 3.) Its complaint alleges, *inter alia*, breach of contract and unjust enrichment, and it also includes a demand for attorney's fees. (*Id.* at 12–14.) Schindler removed the case to this Court

2

on February 2, 2019, based on diversity jurisdiction. (*See* Docket Entry 1.) Schindler answered the complaint the same day, raising 13 affirmative defenses and adding a counterclaim against UHS for breach of contract for unpaid maintenance fees. (Docket Entry 2, at 1–5.) Discovery was completed on November 15, 2019 (*see* Docket Entry 16), and UHS has moved for summary judgment on all of Schindler's affirmative defenses (Docket Entry 27).

### III. Applicable Legal Standards.

A party is entitled to summary judgment if the record shows that there is no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56). A party resisting summary judgment may not rest on the allegations or denials in his pleadings but must come forward with sufficient evidence to demonstrate a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of material fact is "genuine," and therefore sufficient to overcome a summary judgment motion, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view "all facts and inferences in the light most favorable to the nonmoving party." *Guar. Bank & Tr. Co. v. Agrex, Inc.*, 820 F.3d 790, 794 (5th Cir. 2016). It is only when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [that] there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). However, Rule 56 does not "impose upon the district court a duty to sift through the record in search of evidence to support a

3

party's opposition to summary judgment . . . . that duty [is allocated] to the opponent of the motion . . . ." *Skotak v. Tenneco Resin, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992).

## IV. Analysis.

UHS seeks summary judgment on all 13 of Schindler's affirmative defenses. As to the two related defenses of failure to mitigate and to secure reasonable repair costs, UHS argues that Schindler has failed to put forward any competent summary judgment evidence to support its position. As to the remaining 11 defenses, UHS argues that Schindler has effectively conceded that summary judgment should be granted by failing to respond to its motion. (*See* Docket Entries 27, at 3; Docket Entry 33, at 1–2.) Each of these arguments is considered below.

### A. *Schindler's Failure-to-Mitigate Defenses.*

In its answer, Schindler raises as affirmative defenses that UHS failed to mitigate damages and failed to secure reasonable repair costs from its substitute contractor. (Docket Entry 2, at 4.) Both of these failure-to-mitigate defenses are based on the rule that, "[w]here a party is entitled to the benefits of a contract and can save himself from the damages resulting from its breach at a trifling expense or with reasonable exertions, it is his duty to incur such expense and make such exertions." *Great Am. Ins. Co. v. North Austin Mun. Utility Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995) (quoting *Walker v. Salt Flat Water Co.*, 128 Tex. 140, 96 S.W.2d 231, 232 (1936)). A party raising such failure-to-mitigate defense must prove (1) the other party could have mitigated its damages but failed to do so due to a lack of diligence; and (2) the amount by which the damages were increased as a result of its failure to mitigate. *Id.*; *Kartsotis v. Bloch*, 503 S.W.3d 506, 522 (Tex. App.—Dallas 2016, pet. denied).

In its response to UHS's motion for summary judgment, Schindler explains that its defenses of failure to mitigate or secure reasonable repair costs are both based on UHS's failure to undertake a competitive public bidding process for the replacement maintenance and service

contract. (Docket Entry 30, at 2.) To show that UHS did not engage in competitive bidding, Schindler points to deposition testimony from Christopher Soto, UHS's engineering director and overseer of vendor contractors. (*Id.*, citing Docket Entry 30-1, at 22.) When asked why UHS ultimately selected Thyssenkrupp, Soto stated as follows:

> A: I went and got names from elevator people — or like for Thyssenkrupp. I had them come in, and we had — we told them what we had, and then if they could handle a job that size, which Thyssen can. And there was only like Thyssen and Schindler that could handle the job with 81 elevators. The contract — or the new contract specifications were drawn up by Persohn/Hahn.
>
> . . .
>
> Q: What made you think about Thyssenkrupp in the first place?
>
> A: Because I knew them from [their] being there before.

(Docket Entry 30-1, at 22.) Based on this deposition testimony, Schindler concludes that UHS failed to engage in a competitive bidding process before selecting Thyssenkrupp as Schindler's replacement. (Docket Entry 30, at 3.) It cites to no additional summary judgment evidence in support of its failure-to-mitigate defense.

Schindler's contention fails. At most, Soto's deposition testimony demonstrates that a competitive bidding process was not undertaken. It does not demonstrate that competitive bidding could have mitigated UHS's damages, or that this mitigation would have taken place but for a lack of diligence on UHS's part. To the contrary, Soto's uncontradicted testimony was that the only elevator companies that could handle the job were Thyssenkrupp and Schindler itself. (*See* Docket Entry 30-1, at 22.) Even viewed in the light most favorable to Schindler, Soto's testimony suggests a competitive bidding process would *not* have mitigated UHS's damages, as the only alternative contractor available was Thyssenkrupp. And even if Schindler had shown mitigation was possible,

5

however, it has put forward no evidence regarding the amount by which UHS's damages were increased as a result of its alleged failure to mitigate, an essential element of a mitigation defense. *See Bloch*, 503 S.W.3d at 522. Likewise, Schindler has put forward no evidence regarding what a "reasonable repair cost" would have been, or how Thyssenkrupp's costs deviated from this amount.

Where an element of a defense has not been supported by proof, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). Discovery was completed on November 15, 2019 (Docket Entry 16), yet Schindler points to no evidence supporting necessary elements of its mitigation defenses. Absent any evidence of the amount by which UHS's damages would have decreased but for its failure to mitigate, both of Schindler's failure-to-mitigate defenses fail as a matter of law. Accordingly, the Court should grant summary judgment against Schindler on those defenses.

**B.**   ***Failure to Support Remaining Affirmative Defenses.***

Regarding Schindler's remaining defenses, UHS argues that, because Schindler pointed to no evidence in its response to summary judgment, it has effectively conceded those defenses are meritless, and UHS is entitled to summary judgment on them. (Docket Entry 33.) UHS is correct.

In its response, Schindler states as follows:

> [UHS]'s summary judgment seeks to dismiss Schindler's affirmative defenses. Among these are: (1) Plaintiff's failure to mitigate damages, and (2) Plaintiff's failure to secure reasonable costs for repairs made on its elevators by a substitute contractor.
>
> The court should deny [UHS]'s motion for summary judgment as to Schindler's two affirmative defenses stated above, because there is enough evidence included in this response to raise a genuine issue of material fact on each element of both of these claims.

6

(Docket Entry 30, at 1.) It appears from Schindler's response that it wishes to abandon its affirmative defenses with the exception of failure to mitigate and failure to secure reasonable costs, already addressed above. Even if Schindler intended to pursue these defenses, however, it cannot withstand summary judgment on them. A party resisting summary judgment may not rest on the allegations or denials in his pleadings but must come forward with sufficient evidence to demonstrate a "genuine issue for trial." *Anderson*, 477 U.S. at 248. And it is not the duty of the district court "to sift through the record in search of evidence to support a party's opposition to summary judgment . . . . that duty [is allocated] to the opponent of the motion . . . ." *Skotak*, 953 F.2d at 915 n.7.

In light of Schindler's failure to support its remaining affirmative defenses, the Court should find there is no genuine issue regarding them, and grant UHS summary judgment.

**V.      Conclusion and Recommendation.**

Based on the foregoing, I recommend that UHS's Motion for Summary Judgment on Defendant's Affirmative Defenses (Docket Entry 27) be **GRANTED**.

**VI.     Instructions for Service and Notice of Right to Object.**

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not

7

consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on June 8, 2020.

_____
Henry J. Bemporad
United States Magistrate Judge